■ In the Matter of ROBERT ABRAMS, as Attorney-General of the State of New York, et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Prior, Jr., J.), entered January 26, 1982 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Public Service Commission which permitted the inclusion of $138 million in deferred taxes in respondent New York Telephone Company's 1981 revenue award. At issue on this appeal is the allowance by the Public Service Commission (hereinafter PSC) of some $110 million of deferred Federal income taxes and $28 million of other deferred payments to the New York Telephone Company (hereinafter NYTEL) to be included in NYTEL's tariffs for 1981. Petitioners contend that these allowances were for fictitious tax expenses and that they were granted contrary to New York law and in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and should, therefore, be annulled. Pursuant to the Internal Revenue Code (US Code, tit 26, § 167, subd [*l*]), NYTEL was permitted to accelerate depreciation of its assets but the benefits which it thus obtained in tax savings were not passed on to current ratepayers. To take advantage of accelerated depreciation, NYTEL was required under the law to use normalization as its accounting procedure. Under normalization, a utility computes its cost of service by use of straight-line depreciation, i.e., the rate charged to current customers includes cost of taxes based on the calculation which approximates the tax liability in equal

amounts for each year of the asset's life. The tax costs collected are placed in a deferred tax account and paid when due. The procedure equalizes costs between all users rather than burdening only those users of the utility when the tax falls due. Normalization also permits the accumulation of capital on which the utility can draw for capital expenditures without incurring the costs of borrowing. This inures to the benefit of ratepayers. The PSC's accounting regulations, enacted pursuant to subdivision 2 of section 95 of the Public Service Law, were amended in 1971 to permit normalization accounting. Since 1970, NYTEL has accumulated some $980 million by maintaining deferred tax accounts. Petitioners contend that the standard to be applied to determining the allowance of public utility expenses should be the actual expenses of the utility and that sections 91 and 97 of the Public Service Law so require. It is their contention that the amounts here permitted are permanent tax savings rather than a deferral and NYTEL has the burden of proving otherwise. We note that New York's Public Service Law requires rates and charges to be just and reasonable (Public Service Law, § 91, subd 1). The term "actual expenses", as used by petitioners, is not found in provisions relating to telephone rates. Although actual costs are a major factor in determining rates, noncost factors may also be considered (*Matter of Forbes Personnel v Public Serv. Comm.*, 74 AD2d 690). While costs can be expensed and directly recovered in the year in which they are incurred, if they are for a capital item, they may be capitalized and recovered over the asset's life. The Public Service Law does not contain a restriction that only actual current expenses may be incurred. The cases cited by petitioners in support of their actual expense argument are not in point and can be differentiated on their facts. Through all these cases runs the recurring fundamental principle that the PSC has the authority to examine tax consequences and that its orders must then accomplish a just and reasonable result. We conclude that NYTEL need only show that its tax costs were just and reasonable within the scope of the PSC's approved accounting procedure. This it has done. Petitioners' contention that there will be no tax liability here because the utility's prosperity and growth will generate future tax deferrals equal to or exceeding future tax liability has been rejected implicitly by the United States Supreme Court (*Federal Power Comm. v Memphis Light, Gas & Water Div.*, 411 US 458, 464, 474). On remand from the Supreme Court, the United States Court of Appeals held that the agency determination allowing Memphis Light & Gas to normalize its Federal income taxes was not in conflict with the actual expenditure theory (*Memphis Light, Gas & Water Div. v Federal Power Comm.*, 500 F2d 798, 807). We find no merit to petitioners' contention that the determination, insofar as it implements Federal tax policy, runs counter to State utility tax law. The PSC, in amending its regulations (16 NYCRR 664.3, added June 30, 1971) to permit use of normalization, erased any possible conflict. Petitioners argue that charging ratepayers for tax items in excess of the actual cost of their utility service is an unlawful confiscation of ratepayers' property in violation of the Fourteenth Amendment. The record adequately reflects the basis for the PSC determination. We find that the rates set have been properly accounted for. Petitioners have failed to show that the ratepayers here have a property right which has been violated. We find, finally, that petitioners' challenge to the PSC's treatment of cost of removal and vacation pay accrued tax book timing differences is flawed for the same reasons articulated regarding treatment of tax costs. NYTEL treats its cost of removal of equipment and accrual of vacation pay on a cash basis for ratemaking and on an accrual basis for Federal income tax. Some $28 million is involved here. Normalizing these costs serves to spread them equitably over a period of years, rather than penalizing consumers in any one year. The PSC's

treatment of these items as costs to the utility was well within its power. Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Mikoll and Weiss, JJ., concur.